# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DON WARE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:20-00404-N** |
| | ) | |
| **KILOLO KIJAKAZI,** *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Don Ware brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 17, 18, 23) and those portions of the certified transcript of the administrative record (Doc. 15) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further administrative proceedings.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, order the entry of final judgment, and conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 26, 27).

With the Court's consent, the parties jointly waived the opportunity to present

## I.  *Procedural Background*

Ware filed the subject DIB application with the Social Security Administration ("SSA") on May 15, 2018. After it was initially denied, Ware requested, and on November 13, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On November 27, 2019, the ALJ issued an unfavorable decision on Ware's application, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 15, PageID.77-91).

The Commissioner's decision on Ware's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on June 23, 2020. (*Id.*, PageID.49-54). Ware subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

---

oral argument. (*See* Docs. 25, 28).

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision

reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a

massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and

---

finding.").

the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397,

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires a showing that the claimant is under a disability, 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per

curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Ware met the applicable insured status requirements through December 31, 2022, and that he had not engaged in substantial gainful activity since the alleged disability onset date of December 7, 2016.[7] (Doc. 15, PageID.82). At Step Two,[8] the ALJ determined that Ware had the following severe impairments: migraines, gastritis, and disease of the esophagus. (Doc. 15, PageID.82-83). At Step Three,[9] the ALJ found that Ware did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 15, PageID.83).

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211.

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

At Step Four,[10] the ALJ determined that Ware had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)[11] except

---

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

that he can occasionally climb ramp or stairs but never climb ladders, ropes or scaffolds[;] cannot work at unprotected heights or around moving mechanical parts[; and] is expected to be absent from work approximately one day per month on a regular and ongoing basis." (Doc. 15, PageID.83-86). Based on the RFC and the testimony of a vocational expert,[12] the ALJ found that Ware was capable of performing past relevant work as a machine operator. (Doc. 15, PageID.86). Thus, the ALJ found that Ware was not under a disability as defined by the Social Security Act from the disability onset date through the date of the ALJ's decision. (*Id.*, PageID.87).

## IV.   *Analysis*

Ware argues that the ALJ reversibly erred by failing to provide any explanation for his RFC finding that Ware would miss only one day of work a month,

---

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

as opposed to more. Upon careful consideration, the undersigned finds that reversible error has been shown.

According to Social Security Ruling (SSR) 96-8p,[13] "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities … RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level." 61 FR 34474, 34476, 1996 WL 362207 (July 2, 1996). Thus, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 … Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." 61 FR 34474, 34475. To this end, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

---

[13] While Ware does not expressly rely on SSR 96-8p in his brief, he cites to case law from the Fourth Circuit whose relevant holdings discuss that ruling. *See* (Doc. 18, PageID.643-644); n.18, *infra.*

findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 34478.

"Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). Federal courts hearing appeals of the Commissioner's decisions are not bound by SSRs, but they are accorded "great respect and deference where the statute is not clear and the legislative history offers no guidance." *B. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Apr. 1981).[14] Moreover, courts "require the agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals. This is the case even where … the internal procedures are more rigorous than otherwise would be required." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (citations and quotations omitted).

The Eleventh Circuit Court of Appeals, in a recent published opinion, based its finding of reversible error in part on that ALJ's failure to follow SSR 96-8p's requirements to perform a "function-by-function" RFC assessment and include a "narrative discussion describing how the evidence supports each conclusion." *See*

---

[14] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

*Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065-66 (11th Cir. 2021).[15] In *Pupo*, the panel held that the ALJ reversibly erred by failing to consider the claimant's non-severe but medically determinable impairment of stress urinary incontinence when conducting his RFC assessment, explaining that, while the ALJ "noted that [the claimant] had been treated for incontinence in his decision[, the ALJ] did not discuss how her incontinence would impact her ability to perform work at the medium level, especially how it would affect her ability to lift and carry weight." *Id.* at 1064-65. The panel found this "particularly troubling" given the extensive evidence in the record regarding the claimant's incontinence. *Id.* at 1065.[16] Noting that the ALJ "did not rely on any [medical] opinion evidence" regarding the claimant's physical abilities,[17] the panel observed:

> The absence of such medical opinion evidence is particularly concerning here because the ALJ also failed to conduct a function-by-function assessment of Pupo's physical abilities and to explain how the non-

---

[15] *Pupo* was issued November 3, 2021, almost five months after Ware filed his brief (Doc. 18), and three months after this action was fully briefed and taken under submission (*see* Doc. 28). However, no party advised the Court of this "pertinent and significant authority." *See* S.D. Ala. CivLR 7(f)(3) ("If pertinent and significant authority comes to a party's notice after the briefs have been filed, but before decision, a party may promptly advise the Court by notice setting forth the citations and stating the reason the authority was not cited in the party's brief."); (Doc. 28 (text-only order taking case under submission while pointing out CivLR 7(f)(3))).

[16] As the panel described it, "the record shows that Pupo saw numerous gynecologists and a urologist about her incontinence and uterine prolapse; she complained about incontinence to multiple providers, noting that she had to wear five pads a day; she was referred to have surgery in 2014 but was unable to receive medical clearance; she complained of incontinence when coughing or lifting weight; she had a positive cough test; and treatment through medication had failed." *Pupo*, 17 F.4th at 1065.

[17] The *Pupo* ALJ gave "minimal weight" to the only medical opinion about the claimant's physical abilities and limitations. 17 F.4th at 1065.

opinion evidence in the record—both medical and nonmedical—supported his finding that Pupo could perform all the physical requirements for medium work, including lifting as much as fifty pounds at a time and frequently lifting up to twenty-five pounds. *See* SSR 96-8p, 61 Fed. Reg. 34474, 34477–78 (requiring the ALJ to perform a "function-by-function" RFC assessment to avoid overlooking some of the claimant's limitations or using the incorrect exertional category and requiring the ALJ to include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)"). Instead, the ALJ merely found, without explanation or citation to supporting evidence, that "[t]he objective evidence does not support an RFC less than the medium exertional level."

*Pupo*, 17 F.4th at 1065–66. "[G]iven the combination of all th[o]se factors and shortcomings," the panel "conclude that substantial evidence does not support the ALJ's finding that Pupo could perform medium work with non-exertional limits because he did not adequately consider Pupo's incontinence in assessing her RFC." 17 F.4th at 1066.[18]

 This case bears many similarities to *Pupo*. As in that case, the ALJ here did

---

[18] As Ware's brief points out, the Fourth Circuit Court of Appeals has even more emphatically enforced SSR 96-8p's commands, holding that it requires the ALJ to "*both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (under SSR 96-8p,  (quotation omitted)). *Accord Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) ("[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two … [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." (citing *Woods*, 888 F.3d at 694)); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000) ("While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. Most importantly, he must build an accurate and logical bridge from the evidence to his conclusion." (citation omitted) (not explicitly relying on SSR 96-8p)).

not rely on any opinion evidence to formulate the RFC,[19] and his decision fails to

perform a "function-by-function" assessment or provide any apparent explanation as

to how the non-opinion record evidence supported any of his RFC findings. Instead,

the ALJ simply summarized Ware's subjective testimony and the objective medical

evidence, then conclusorily stated: "In consideration of the claimant's impairments,

---

[19]     The ALJ noted "there is no indication that there is a medical opinion from any medical source…" (Doc. 15, PageID.86). The ALJ also refused to evaluate the "State Agency disability examiner findings or statement of opinions at Exhibit 2A[,]" citing to SSR 96-6p in stating that such prior administrative findings are "neither valuable nor persuasive and are not medical opinions as defined by the regulations…" (*Id.*).

While Ware does not raise this argument, it was also error for the ALJ to completely refuse to consider the state agency findings. On January 18, 2017—long after SSR 96-6p was issued—the SSA substantially revised the regulations governing how the Commissioner considers medical evidence. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions and prior administrative medical findings found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Ware's. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527 (applicable to claims filed before March 27, 2017). Under § 404.1520c, while the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or *prior administrative medical finding(s)*[, w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in" subsection (c) of that section. 20 C.F.R. § 404.1520c(a). Of those factors, the Commissioner must at least explain the "supportability" and "consistency" of a medical opinion or prior administrative medical finding in determining how much persuasive value to assign it. *See id.* § 404.1520c(b)(2). Accordingly, the ALJ was wrong in relying on SSR 96-6p to broadly ignore the prior state agency findings at Exhibit 2A (Doc. 15, PageID.120-130), at least part of which were made by a medical source. *See B. B. v. Schweiker*, 643 F.2d at 1071 (SSRs are accorded "great respect and deference *where the statute is not clear and the legislative history offers no guidance*" (emphasis added); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) ("We will not defer to SSRs if they are inconsistent with the statute or regulations."); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1253 (N.D. Ala. 2011) (Guin, J.) ("While courts generally defer to Social Security Rulings, if the ruling is inconsistent with the regulations, the regulation controls…").

the record as a whole shows that the claimant is able to perform such work that is consistent with the residual functional capacity." (*See* Doc. 15, PageID.84-86).

With regard to the absenteeism limitation that Ware specifically challenges, the fact the ALJ felt it necessary to include such a limitation at all certainly indicates that the ALJ believed Ware's impairments would require missing work to some degree. However, the Court cannot discern from the ALJ's decision why he believed the record indicated Ware would have to miss only one day a month. Without an explain providing "at least some measure of clarity" for this finding, the Court cannot "perform the function entrusted to us in the administrative scheme[,]" which "is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts." *Owens*, 748 F.2d at 1516. While the Commissioner's brief cites evidence that is supportive of the ALJ's absenteeism limitation, the Court cannot affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.*[20]

Here, it was particularly incumbent upon the ALJ explain with "some measure of clarity" why Ware's absenteeism would be limited to one day a month. As Ware correctly points out, at the ALJ hearing the vocational expert testified that a typical

---

[20] For instance, the Commissioner argues Ware's "subjective allegations regarding his migraines are at odds with continued to daily smoking and extensive drinking against medical advice[,]" (Doc. 23, PageID.668), despite the fact the ALJ nowhere discussed Ware's smoking or drinking in his decision. The Commissioner also claims an April 2017 note from Ware's treating physician Dr. Minto noting "allegations of 10 headaches per month with 1 debilitating headache that improved with medication" (*id.*, PageID.667), but the ALJ's decision mentions no such note, or even an April 2017 visit with Dr. Minto.

employer would not tolerate any greater degree of absenteeism. (*See* Doc. 15, PageID.108). Moreover, even just going by the ALJ's summary, the evidence regarding Ware's impairments is at least as substantial as that supporting the claimant's incontinence in *Pupo*, *see* n.16, *supra.*, and could easily support a greater degree of absenteeism than that found by the ALJ. For instance, as the ALJ noted, Ware told his treating physician, Elizabeth Minto, M.D., on multiple occasions that he was experiencing multiple "debilitating" headaches per week, his experience with various medications to control his migraines produced variable results, and he had to discontinue some due to inability to afford them. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[P]overty excuses noncompliance … To a poor person, a medicine that he cannot afford to buy does not exist…" (quotation omitted)).

While substantial evidence may very well support the ALJ's absenteeism limitation, the ALJ failed to provide a reasonably clear explanation for why he reached his conclusion on that issue, and the Court cannot supply that rationale *post hoc*. "In such a situation, 'to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).[21]

---

[21] Ware has also argued the ALJ reversibly erred by failing to provide for any limitations in the RFC related to Ware's migraines. As noted above, the ALJ's explanations for any of the RFC limitations are lacking, and reversible error has already been shown with regard to the absenteeism limitation. Accordingly, the undersigned declines to consider this additional claim of error. *See Pupo*, 17 F.4th at 1066 n.4 ("Pupo's remaining issues on appeal challenge the ALJ's decision to not give controlling weight to her doctors' opinions and finding that her mental impairments

Accordingly, the Commissioner's final decision denying Ware's application for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Ware's May 15, 2018 DIB application is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Ware a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Ware's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Ware be awarded benefits on the subject application following this remand.[22] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall

---

did not meet a listed impairment. Because we remand on two of her other issues, we offer no opinion as to whether the ALJ erred in these regards. On remand from the district court, the ALJ is to reconsider Pupo's claim based on the entire record."). This should not hamper effective appellate review of this decision, if any. *See Henry*, 802 F.3d at 1267 ("Our review is the same as that of the district court, meaning we neither defer to nor consider any errors in the district court's opinion…" (citation and quotation omitted)).

[22] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam)

be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2022.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").